# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| KEVIN G. WIGGINS, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:07-CR-0053-WBH-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:09-CV-2002-WBH-RGV |

## ORDER

## I. PROCEDURAL HISTORY

A federal grand jury charged Movant in a 64-count indictment with an extensive mortgage fraud scheme, including: conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One); bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two through Eight); wire fraud, in violation of 18 U.S.C. § 1343 (Counts Nine through Thirty-Nine); and money laundering, in violation of 18 U.S.C. § 1957 (Counts Forty through Sixty-Four). [Doc. 1]. Movant pleaded guilty to Counts One, Nine, and Ten, pursuant to a negotiated plea agreement. [Doc. 77]. In exchange, the Government agreed to dismiss the remaining counts. [Id.]. The plea agreement provides that Movant "voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground," unless his sentence exceeds "the applicable sentencing guideline range"

or the Government appeals. [Id., plea agreement ¶ 13]. Movant signed the plea agreement and a separate certification section, which states in relevant part:

> I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my sentence or challenging my sentence in a post-conviction proceeding for any reason whatsoever. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.

[Id. at 11-12].

At the plea hearing, appearing before Judge Jack T. Camp, Movant was sworn in and confirmed that he had not consumed any alcohol, illegal substances, or prescription drugs that day. [Doc. 100 at 2, 4]. Movant also confirmed that he understood the elements of his offenses. [Id. at 5-6]. Movant acknowledged that he was satisfied with counsel's representation. [Id. at 6]. Movant further stated that he had read and discussed the plea agreement with counsel and that he was not entering into the guilty plea under threat or coercion. [Id.]. Movant confirmed that no promises had been made to him beyond what was contained in the plea agreement, with the exception that his girlfriend would not be charged. [Id. at 6-7]. The Court also discussed with Movant the Sentencing Guidelines and that the Guideline recommendation is only advisory, such that the Court could impose a sentence above or below that range. [Id. at 10-11]. Next, the Court reviewed the terms of the

2

sentence-appeal waiver and its consequences. [Id. at 11-12]. Movant acknowledged that he understood the effect of the waiver. [Id.]. The Court explained that Movant could not later withdraw his plea, even if he believes that the sentence he receives is unfair. [Id. at 12]. Movant acknowledged that he understood the rights he was giving up in pleading guilty. [Id. at 12-13]. Movant admitted that he committed the crimes charged in Counts One, Nine, and Ten. In the following colloquy, the Government described the facts that it would establish at trial:

> The government's evidence would show that beginning in early 2001, the defendant, Mr. Astwood, an appraiser, and the defendant's office manager, Ms. Christopher, participated in what is called a refi mortgage loan scheme whereby the defendant would contract to purchase properties. For example, in Counts 9 and 10, properties were contracted to be purchased at $70,000 and $80,000, and thereafter the defendant paid Mr. Astwood to fraudulently increase the valuation by $100,000 or so. Then the defendant transferred the properties to straw borrowers, usually family members, who would claim they owned the property at that point in time and apply for refi mortgage loans in amounts inflated by $100,000 in excess of the amount that Mr. Wiggins and his company, TWF, "The Wiggins Family," had contracted to buy the property.
>
> Thereafter, he would go to closing and obtain the loan proceeds which had been wire-transferred in from out-of-state to the Atlanta area closing attorneys for the refi loans, and use a portion, $80,000 or $70,000 as in counts 9 and 10, to actually purchase the property which had already been refinanced to get the $175,000 loans on these properties.
>
> Also, Mr. Astwood would be paid anywhere from two to three times the normal appraisal rate to bring in these inflated appraisal amounts because the true market value was what the amount at which the defendant was actually contracting to buy the property, not the extra $100,000 that Mr.

3

Astwood was tacking on. The lender would be told that the properties had been rehabbed or renovated, and of course they had not been renovated at the time of the appraisal, or at the time that the refi loans were obtained.

On occasion the employment and the income of the straw borrowers had to be tweaked, had to be increased, and in those cases false returns and false W2's were used, but that wasn't generally the norm; the general way that the defendant and his co-conspirators increased the income in order for straw borrowers to obtain refi loans on as many as ten properties each was by creating fake leases showing that the rehabbed properties had been leased to individuals that would cover the mortgage payment on that property, plus reserves. And of course those leases were completely false – the individuals were false, the tenants were false, and the defendant and his co-conspirators would sign the name of the lessee and the lessor.

. . . there were approximately 80 properties involving fraudulent loans totaling about $15 million. They were inflated by half, so . . . we expect a loss of just under $7 million from this scheme from what we know. The Government knows at this point that there were some purchase money loans where there were fake borrower down payments and false qualifying information also.

These 80 properties were located in a number of diverse neighborhoods commonly known as the West End area of Atlanta. The financial institutions that provided such loans were FDIC insured, and they included as the Court stated, Chase Bank, Colonial Bank, Wachovia, and Washington Mutual Bank, and those were FDIC insured at the time of the transactions.

In addition, in all of the wire fraud counts, the closing or loan proceeds were actually wired from the out-of-state accounts of the lenders to the Atlanta area closing attorneys, so that is the interstate wire communication in furtherance of the scheme.

The defendant and his company would get pay-offs from the refi loans and from the purchase money loans generally directed to his company,

and thereafter the straw borrowers would be paid anywhere from approximately $10,000 per property, sometimes $20,000 per property.

THE COURT: The straw borrowers were not people that actually wished to purchase the property, they were simply --

[Assistant United States Attorney] Ms. McKenzie: They were generally relatives and some additional individuals that the defendant and his co-conspirators had told that they could become real estate investors, and that he would lease out the properties. They didn't know about the fraudulent increases, or some of them. The majority of them didn't know about the fraudulent increase in the property values. They were told they didn't need any money to become a real estate investor, and that the defendant would rent out their properties, that they would be rehabbed, and that the rental income would pay their mortgages, and that they could be sold at a profit at a later time – so they allowed their credit to be used to obtain such loans.

Most of the straw borrowers were located in California, or other out-of-state locations. The defendant obtained, in most cases, legitimate powers of attorney from them, and so his staff, including Ms. Christopher, prepared the loan applications and signed their names. On some occasions the power of attorney was fraudulent, the straw did not sign it, and they did not sign the leases. That was something they were told the property had been leased when it basically had not been – certainly had never been leased for the amount represented for the loans.

While the defendant did rehab some of the property after he obtained the loans, not before, the lender wouldn't have allowed the loans if there had been no rehab done before the loans. But some of it was done after the fact, certainly not near the entire amount of the inflated loan amount was put back into the properties . . . the property was titled in their [the straw borrowers] names.

Just about all of the 80 properties have been foreclosed on. There were a few that could be sold for the loan amount and/or a little more, because rehab had been done on a limited number. But the vast majority of them

5

were foreclosed on, and the lenders suffered substantial loss. Pretty much the mortgage was the initial lender on the refi loans, and the initial lenders immediately resold the loans to Washington Mutual, U.S. Bank, Chase and a number of other financial institutions, and they were the ones that eventually suffered the loss afterwards. If there were not tenants in there, there is nobody to pay.

[Id. at 14-19].

The Court then asked Movant if he had any dispute with the Government's factual proffer, and Movant responded, "No, sir." [Id. at 20]. The Court found that Movant had committed the crimes to which he was pleading and accepted Movant's plea, finding that it was a knowing, informed, and voluntary plea. [Id.].

On July 29, 2008, Judge Camp found that Movant's Guideline range was 97 to 121 months and sentenced him to 100 months of imprisonment after finding that this sentence best achieved the goals set out in the sentencing factors of 18 U.S.C. § 3553(a). [Doc. 123; Doc. 136 at 81-82]. On July 23, 2009, Movant, proceeding pro se, filed the instant motion to vacate his sentence, raising the following grounds for relief:

1. prosecutorial misconduct for presenting false evidence at sentencing;

2. vindictive and selective prosecution based on Movant's race;

3. ineffective assistance of counsel for failing to (a) research and respond to Movant's questions concerning the sentence-appeal waiver, (b) raise certain objections and present certain evidence at

6

AO 72A
(Rev.8/82)

>   sentencing due to an inadequate investigation, (c) object to the Government's breach of the plea agreement concerning the number of victims and Movant's cooperation, (d) advise Movant that he could move to withdraw his guilty plea before sentencing, and (e) failing to file an appeal despite Movant's express desire that he do so;
>
> 4. breach of plea agreement by Government concerning its sentencing recommendation as to the number of victims and nature of Movant's cooperation;
>
> 5. failure of Government to file a motion to reduce his sentence; and
>
> 6. abuse of discretion by this Court for finding 10 or more victims.

[Doc. 138 at 5-9, Attach.]. On August 14, 2009, Movant submitted a 98-page memorandum in support of his motion to vacate, arguing, in part, that counsel's misleading advice led him to enter an involuntary guilty plea and that counsel failed to file a motion to withdraw the plea as he requested. [Doc. 144 at 28-38]. On October 9, 2009, Movant submitted an amendment to his motion to vacate to add a claim that counsel failed "to argue for downward departure based on substantial victim conduct by Perimeter Mortgage." [Doc. 157].

The Government responds that most of Movant's claims are procedurally barred due to his failure to raise them in a direct appeal and that Movant in any event waived his right to seek relief under § 2255 pursuant to the valid sentence-appeal waiver in the plea agreement. [Doc. 159]. Movant replies, incongruously stating, among other

7

things, that he did not refuse counsel's request to file a direct appeal and that, if a hearing is required on this motion to vacate, he would like to represent himself. [Doc. 163 at 10, 12]. Movant further argues that none of his claims are barred by the sentence-appeal waiver. [Doc. 169 at 2-3].

## II. DISCUSSION

### A. Standard of § 2255 Review

Congress enacted 28 U.S.C. § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally imposed sentences. United States v. Jordan, 915 F.2d 622 (11th Cir. 1990). Pursuant to § 2255, individuals sentenced by a federal court can attack a federal sentence by asserting: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962); see generally United States v. Hayman, 342 U.S. 205 (1952). However, "[t]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The § 2255 movant must establish that the facts surrounding his claim present "exceptional

8

circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Bowen v. Johnston, 306 U.S. 19, 27 (1939). To entitle a § 2255 movant to relief, the error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979).

### B.     Movant's Claims that are Procedurally Defaulted

All of Movant's grounds for relief, with the exception of ground three alleging ineffective assistance of counsel, are procedurally defaulted because Movant failed to raise them on direct appeal. A criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice. United States v. Frady, 456 U.S. 152, 167-68 (1982); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir.1994). "[A] prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that some objective factor external to the defense impeded counsel's efforts to comply with the procedural rule, or that his attorney's performance failed to meet the Strickland standard for effective assistance of counsel." Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997); see also United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (holding that only a

9

AO 72A
(Rev.8/82)

meritorious ineffective-assistance-of-counsel claim may constitute cause). In order to establish that a failure to review a defaulted claim will result in a fundamental miscarriage of justice, Movant must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" not presented at trial. Schlup v. Delo, 513 U.S. 298, 324, 327 (1995).

Movant asserts his counsel's ineffectiveness as cause for failing to raise his claims on appeal. However, as is discussed below, Movant failed to establish that he instructed his lawyer to file an appeal. As such, his cause argument fails.

This Court further concludes that Movant has not established a fundamental miscarriage of justice. Movant has not presented any argument or evidence that might tend to demonstrate that his guilty plea was not knowing and voluntary. At the plea he admitted his guilt and agreed that he had committed the acts that the Government stated it would prove at a trial. As such, Movant's guilt is undisputed. Aside from Movant's entirely specious claim that he was selectively prosecuted based on his race, all of Movant's grounds for relief relate to his sentencing. However, given the extensive fraud Movant admitted to during his plea hearing – agreeing that he had fraudulently secured *eighty* mortgage loans costing lenders just under seven million dollars – Movant's one-hundred-month sentence cannot be said to have been

10

unreasonable. As such, Movant cannot demonstrate prejudice to lift the procedural bar.

## C. **Movant's Claims are Barred by the Sentence-Appeal Waiver**

"It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005). "[F]or a sentence-appeal waiver to be enforceable, the government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. "[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes [a collateral attack upon] the sentence through a claim of ineffective assistance of counsel during sentencing." Id. at 1342.

During the plea colloquy, the Court specifically questioned Movant about the sentence-appeal waiver, and it is clear that Movant understood the full significance of the waiver. [Doc. 100 at 11-12]. Although Movant claims that counsel failed to respond to his questions about the effect of the waiver, those alleged discussions with counsel occurred well after Movant had pleaded guilty. [See id.; Doc. 144 at 33]. Having thoroughly reviewed the record in this case, this Court finds that Movant voluntarily and intelligently waived his right to appeal his conviction and sentence and

to pursue any other collateral post-conviction relief. The only exceptions to the waiver, a sentence exceeding the Guideline range or an appeal by the Government, do not apply here. Accordingly, Movant is barred from raising his specific claims that counsel was ineffective at sentencing and for failing to raise grounds unrelated to the validity of his guilty plea in an appeal.

### D.      Counsel's Purported Failure to Move to Withdraw Guilty Plea

Notably, a sentence-appeal waiver does not preclude a defendant from filing a § 2255 motion to challenge counsel's effectiveness in regard to the validity of a plea. Williams, 396 F.3d at 1342 n.2; Cowart v. United States, 139 F. App'x 206, 208 (11th Cir. 2005). To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985). The movant has the burden of affirmatively proving prejudice, Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000), and a movant's bare allegation that he or she would not have pleaded guilty is insufficient to establish prejudice, United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985).

Movant claims that counsel failed to advise him of his right to withdraw his guilty plea before sentencing. [Doc. 138 at 10]. Movant argues that his guilty plea was involuntary because counsel gave him "misleading advice" regarding his potential sentence. [Doc. 144 at 28-32; Doc. 169 at 4-7]. The discussions with counsel that Movant references in support of this argument, however, all allegedly occurred well after October 17, 2007, the date he pleaded guilty. During the plea colloquy, the Court advised Movant that he could not later withdraw his guilty plea, even if he felt his sentence was unfair. [Doc. 100 at 12]. As to Movant's claim that counsel should have moved to withdraw his guilty plea after the Government allegedly breached the plea agreement, the signed agreement stated that Movant understood and agreed "that the recommendations of the Government incorporated within this Plea Agreement or otherwise discussed between the parties are not binding on the Court and that the Court's failure to accept one or more of the recommendations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement." [Doc. 77, plea agreement at 6].

Moreover, the Government did not breach its agreement to recommend less than 10 victims and, in fact, objected to the probation officer's finding of 12 victims. [See id.; Doc. 136 at 5, 9-10]. As to Movant's assertion that the Government breached the plea agreement by failing to move for a downward departure, the claim is entirely

13

AO 72A
(Rev.8/82)

false. First, the Government had the discretion, but was not obligated, to file such a motion based on Movant's cooperation. [Doc. 77, plea agreement at 9-10], and the Government did in fact file such a motion, recommending a one-level downward departure. [Doc. 136 at 78-79]. Thus, the Court finds that the Government did not breach the plea agreement, and Movant has failed to show that counsel provided ineffective assistance or that he would not have pleaded guilty absent counsel's advice.

### E. Counsel's Purported Failure to Appeal

Regarding Movant's claim that his lawyer failed to file an appeal on his behalf, Judge Camp referred the issue to Magistrate Judge Alan J. Baverman for a hearing and a Report and Recommendation (R&R). Judge Baverman has now held a hearing and submitted his R&R, [Doc. 210], in which he recommends that this Court deny relief on the claim based on his finding that Movant did not instruct his lawyer to file an appeal. Movant has filed his objections, [Doc. 216], to the R&R, and this Court will thus perform a *de novo* review of those matters to which the Movant objected and a plain error review of the remainder of the R&R. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

At the hearing before the Magistrate Judge, both Movant and his lawyer testified. Based on the evidence presented at the hearing, the demeanor of the witnesses, and Movant's lack of credibility, the Magistrate Judge credited counsel's

14

AO 72A
(Rev.8/82)

testimony "that Movant did not want to appeal because he was satisfied with his sentence and had no viable issues to raise on appeal." [Doc. 206 at 6]. Based on that finding, the Magistrate Judge recommended that § 2255 relief on this claim of ineffective assistance of counsel be denied.

In his objection to the R&R, [Doc. 216], Movant disputes the Magistrate Judge's factual determination that Movant did not instruct his lawyer to file an appeal. However, this Court must accept the Magistrate Judge's findings of fact unless they are clearly erroneous and must defer to his credibility determinations unless they are not believable. United States v. Moore, 525 F.3d 1033, 1040 (11th Cir. 2008). At the hearing, Movant testified that, after his sentencing hearing, he told his lawyer to research what issues could be appealed. Counsel testified that Movant told him he did not want to appeal. The Magistrate Judge was in the courtroom to evaluate the credibility of the witnesses, and he found that counsel was more believable. Given the fact that substantial evidence supports the Magistrate Judge's findings, this Court must accept them. Based on those findings, Movant cannot demonstrate that he is entitled to relief, and his ineffective assistance claim thus fails.

### III. CONCLUSION

Based on the foregoing, this Court concludes that Movant is not entitled to relief under § 2255. Accordingly,

15

**IT IS HEREBY ORDERED** that the R&R of the Magistrate Judge, [Doc. 210], is hereby **ADOPTED** as the Order of this Court and §2255 relief as to Movant's claim that his lawyer failed to file an appeal on Movant's behalf is **DENIED**.

**IT IS FURTHER ORDERED** that, this Court having concluded above that Movant has entirely failed to demonstrate that he is entitled to § 2255 relief, Movant's § 2255 motion, [Doc. 138], is **DENIED**.

Finally, as Movant no longer has any claims for relief pending before this Court,

**IT IS FURTHER ORDERED** that Petitioner's motion for summary judgment, [Doc. 195], motion for order to show cause why motion for summary judgment and motion to vacate sentence should not be granted, [Doc. 196], emergency motion for injunctive and declaratory orders, [Doc. 197],[1] motion for production of documents, [Doc. 198], emergency motion to modify writ of habeas corpus ad testificandum to remain in jurisdiction, [Doc. 202], motion for permission to seek appellate review of interlocutory orders, [Doc. 203], motion to reissue magistrate judge's report and recommendation, [Doc. 213], emergency motion for reconsideration of order on motion for release from custody, [Doc. 224], are all **DENIED AS MOOT**.

---

[1] While Movant's assertion that officials at the Terminal Island Federal Correctional Institution in California deprived him of access to his legal documents *may* state a claim for relief, [doc. 197], this Court notes that it does not enjoy personal jurisdiction over any potential defendants regarding that claim. To the degree that Movant states such a claim, it is dismissed without prejudice.

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 21st day of June, 2011.

_____
WILLIS B. HUNT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

17